IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM HARRISON MEADE,

        Movant,

v.                                Civil Action No. 2:19-cv-00141
                                  Criminal No. 2:15-cr-00133-01

UNITED STATES OF AMERICA,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's Motions and Supplemental Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF Nos. 39, 49, 50), and the Response of the United States, seeking dismissal of the § 2255 motions. (ECF No. 57). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's Motions be denied; Respondent's request for dismissal be **GRANTED**; and this matter be **DISMISSED**, with prejudice, and removed from the docket of the Court. As the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## I.    <u>Background</u>

On July 1, 2015, Movant William Harrison Meade ("Meade") was indicted by a federal grand jury in the United States District Court for the Southern District of West Virginia ("the Court") on one count of conspiracy to distribute oxycodone ("Count One") and one count of money laundering ("Count Two"). (ECF No. 1).[1] On August 19, 2015, Meade entered into a written agreement with the United States in which he agreed to plead guilty to Count One of the indictment in exchange for the United States dismissing Count Two. (ECF No. 22). As part of the plea agreement, Meade waived his right to appeal and collaterally attack his conviction and sentence as follows:

> Mr. Meade knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. ... Mr. Meade also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(*Id*. at 4). The written agreement clearly set out the maximum penalty to which Meade was exposed by his guilty plea, including imprisonment for a period of up to 20 years. (*Id*. at 2). In addition, the agreement expressly noted that sentencing was within the sole discretion of the Court and no representations or promises had been made as to a specific sentence. (*Id*. at 5).

---

[1] All citations to the record refer to documents filed in Meade's underlying criminal case, No. 2:15-cr-00133-01.

On September 2, 2015, Meade appeared before the Court to enter his guilty plea. (ECF No. 19). After confirming that Meade was not under any disability and was competent, the Court proceeded to explain the consequences of Meade's guilty plea, including the potential loss of civil rights, sentencing exposure, terms of supervised release, potential monetary penalties, and loss of federal benefits. (ECF No. 56). The Court explained both the appeal and habeas processes and explicitly advised Meade that he was waiving his right to appeal his conviction and sentence on any ground whatsoever, except for one: Meade could appeal a sentence that was greater than the maximum penalty set by statute. (*Id.* at 8-10). The Court further notified Meade that he was also waiving his right to collaterally attack his conviction and sentence; although, the Court made clear that these waivers did not apply to claims of ineffective assistance of counsel. (*Id.* at 10). Meade confirmed that he understood the waivers, that he had reviewed the plea agreement in detail with his attorney, and that all of his questions about the agreement had been answered. (*Id.* at 10-11). In addition, Meade's attorney confirmed that he believed Meade fully understood his rights and the consequences of entering a plea of guilty. (*Id.* at 19).

When asked by the Court, Meade acknowledged that he was entering into the plea agreement voluntarily and of his own free will, without any coercion and without any promises or inducements not contained in the plea agreement. (*Id.* at 20-21). Meade admitted that he was actually guilty of the offense charged in Count One of the indictment. Based on these representations, the Court stated: "I will find that the defendant is competent and capable of entering an informed plea and that the plea is freely and voluntarily made; that the defendant understands the nature of the charge and is aware of the consequences of the plea. I will find that the defendant understands

3

his rights and understand that he is giving up rights by entering a plea of guilty." (*Id.* at 22). The Court accepted Meade's plea of guilty, but deferred adjudging him guilty until the time of sentencing. The Court instructed the probation officer to prepare a Presentence Investigation Report ("PSR"). (ECF No. 56 at 22).

On January 20, 2016, the Court began Meade's sentencing hearing, but recessed it in order to give the probation officers and parties an opportunity to investigate some issues related to Meade's prior convictions. (ECF Nos. 25, 54). The Court questioned whether one of the convictions fell within the look-back period for application of the career offender guidelines and requested clarification. (ECF No. 54). The Court stated: "I think we need to be a hundred percent on this before we sentence this defendant as a career offender … I think that when we're talking about a career offender designation, which brings with it a pretty lengthy sentence, it is worth the time to check into it and make sure we get it right." (*Id.* at 3, 5).

The parties and the Court reconvened on May 17, 2016 for a continuation of Meade's sentencing hearing. (ECF No. 32). By that time, Senior U.S. Probation Officer, Teresa King, had provided the Court and parties with the PSR. (ECF No. 36). In the PSR, Ms. King opined that Meade met the definition of career offender set forth in § 4B1.1 of the United States Sentencing Guidelines ("USSG"). Ms. King based her opinion on the following information: (1) Meade was at least 18 years old at the time of the instant offense; (2) the instant offense was a "controlled substance offense;" and (3) Meade had at least two prior felony convictions of either a crime of violence or a controlled substance offense. (*Id.* at 13). The predicate convictions used by Ms. King included a 1994 conviction for attempted first degree murder and a 1996 conviction for conspiracy to distribute marijuana. (*Id.*). The career offender designation placed Meade at a base

offense level of 32; however, this designation did not result in an increased offense level, because the amount of drug attributed to Meade as part of the conspiracy also yielded a base offense level of 32. (ECF No. 36 at 13-14). Similarly, Meade's Criminal History Category, based solely on his prior criminal convictions, was VI, which was the same Criminal History Category mandated by the USSG's career offender guidelines. (*Id.* at 24).

At the sentencing hearing, the Court discussed the career offender designation with the parties. (ECF No. 55 at 3-5). The Court indicated that a letter prepared by the West Virginia Division of Corrections verified that Meade's sentence for the 1994 attempted first degree murder extended into 1995, at a minimum; thus, placing that conviction within the temporal requirement of the USSG's career offender guidelines. (*Id.* at 4). The Court then accepted Meade's guilty plea, accepted the plea agreement, and concluded that Meade was a career offender based on the two convictions identified by Ms. King. The Court calculated that Meade had a sentence range under the USSG of 151 to 188 months' imprisonment, followed by three years of supervised release. Meade's counsel argued for a downward variance. The Court ultimately sentenced Meade to 139 months of imprisonment and three years of supervised release. (*Id.* at 20).

Meade did not appeal his conviction or sentence, but on November 4, 2016, he filed a motion under Fed. R. Crim. P. 52(b), which was later construed to be a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (ECF No. 39). After receiving a *Roseboro* notice from the Court, Meade filed an amended § 2255 motion and supplemental motion. (ECF Nos. 49, 50). In these motions, Meade asserts two grounds. First, he claims that the Court erred by sentencing him as a "Career Armed Offender." (ECF No. 49 at 5). Second, Meade claims ineffective assistance of counsel, alleging that

his counsel facilitated a plea agreement that included the career offender enhancement, even though counsel knew that the enhancement did not apply, and that counsel "allowed a Brady violation to take place, when both he, and the Government, and Judiciary had exculpatory facts which would have been in Defendant's favor." (ECF No. 49 at 6-8).

In his supplemental motion, Meade elucidates his grounds for relief. Meade contends that his counsel was "blatantly ineffective (bordering on negligent) for failure to conduct pre-trial discovery and investigation." (ECF No. 50 at 2). Meade states that had his counsel done the proper investigation, he would have learned that (a) packaging receipts from Federal Express demonstrated that Meade had only participated in the conspiracy for three months, not for an entire year; and (b) Meade was only responsible for 5,000 pills rather than the 15,000 pills falsely claimed by the Government. (ECF No. 50). Meade claims that the Government withheld crucial evidence—that being the Federal Express receipts—and Meade's counsel allowed this to happen. Meade also argues that he should not have been sentenced as a career offender, because his conviction for attempted first degree murder did not qualify as a crime of violence and his conviction for distribution of marijuana was not a controlled substance offense, as it was a simple possession of marijuana. (*Id.* at 5-6).

In its responsive brief, the Government argues that Meade's § 2255 motion should be denied and the case dismissed on several grounds. (ECF No. 57). First, the Government points out that Meade knowingly and voluntarily signed a waiver of his right to appeal and to pursue a collateral challenge to his conviction and sentence, except in very limited circumstances. Based on these waivers, Meade is precluded from challenging the Court's career offender designation and its determination of relevant

conduct. Second, the Government contends that Meade's challenges to the relevant conduct finding and career offender enhancement are matters that must be raised on direct appeal. Meade's failure to pursue them on direct appeal resulted in the default of those challenges. Third, the Government asserts that Meade has failed to demonstrate ineffective assistance of counsel. According to the Government, Meade agreed to a detailed stipulation of facts as part of his plea agreement, admitting to the very conduct he now claims should have been disproven. Finally, the Government states that Meade was not designated as an armed career offender, as he claims at various points in his motions, but was found to be a career offender under the USSG. The Government adds that Meade clearly qualified as a career offender, and, in any event, the designation did not change his base offense level or Criminal History Category. Therefore, that ground for relief is also meritless.

## II.    <u>Standard of Review</u>

Respondent requests that Meade's motion be dismissed. (ECF No. 57 at 1). Respondent does not articulate under which rule's authority he seeks dismissal, but, presumably, this request is made pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Respondent filed a Response concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. CV PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018); Rule 12, *Rules Governing Section 2255*

*Proceedings for the United States District Courts* (stating that "[t]he Federal Rules of Civil Procedure ... to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.")

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence

8

was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006).

### III.   Discussion

Having considered each of Meade's grounds for relief in turn, and for the reasons set forth below, the undersigned **FINDS** Meade's § 2255 motion to be without merit.

#### A.   *Meade Waived His Right to Challenge the Court's Application of the Career Offender Enhancement*

The record in this case unequivocally demonstrates that Meade waived his right to collaterally attack his sentence in his written plea agreement. (ECF No. 22 at 4). The Fourth Circuit "has recognized that the Government often secures waivers of both appellate and collateral attack rights from criminal defendants as part of their plea agreement." *Prater v. United States*, No. 5:10CR41-01, 2013 WL 6498232, at *11 (N.D.W. Va. Dec. 11, 2013) (citing *United States v. Lemaster,* 403 F.3d 216, 220 (4th Cir. 2005) (internal quotation marks omitted)). In order "[t]o determine the validity of a waiver of collateral-attack rights in a plea agreement, a court must examine the language of the waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings." *Id*. at *6 (citing *United States v. Blick,* 408 F.3d 162 (4th Cir. 2005)).

Here, the written plea agreement explicitly states that Meade knowingly and voluntarily waived his right to collaterally attack his conviction or sentence except for claims of ineffective assistance of counsel. (ECF No. 22 at 4). Moreover, at Meade's Rule

11 change-of-plea hearing, the Court carefully and thoroughly explained to Meade the appeal and habeas processes and the effect that the waiver would have on Meade's right to use those processes. (ECF No. 56 at 8-10). After providing this explanation, the Court asked Meade if he understood that he could not appeal his conviction or sentence, or challenge either of them on collateral review, except on two limited grounds. Meade acknowledged, under oath, that he understood the waiver provisions and denied having any questions about the effect of the waivers. (*Id*.). Meade additionally stated under oath that he had read and reviewed each paragraph of the plea agreement with his attorney, initialed each page, signed the plea agreement, and understood and agreed with all of its terms and provisions. (*Id*. at 4-5). Meade's initials appear on the page containing the waiver provision. (ECF No. 22 at 4).

At the time of the Rule 11 hearing, Meade was 47 years old and had previously obtained a GED. (ECF No. 56 at 3). He could read and write. Meade denied taking any medications or consuming any alcohol in the 24-hour period before the plea hearing, denied having any disability or mental impairment or illness, and confirmed that he could fully participate in the proceedings. (*Id*. at 3-4). Meade's counsel also affirmed that Meade was competent, and that counsel had reviewed every paragraph of the plea agreement with Meade. (*Id*. at 4-5). Therefore, the written plea agreement, Meade's statements during the plea hearing, and the other noted factors clearly establish that Meade knowingly and intelligently waived his right to collaterally attack his conviction or the reasonableness of his sentence in this § 2255 proceeding. As such, his first ground for relief is precluded by his waiver.

Furthermore, as pointed out by Respondent, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries

that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Fuller v. United States*, No. 4:13-CR-00072, 2018 WL 3398129, at *2 (E.D. Va. July 11, 2018) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). For that reason, "[m]otions under § 2255 'will not be allowed to do service for an appeal.'" *Fuller*, 2018 WL 3398129, at *2 (quoting *Sunal v. Large*, 332 U.S. 174, 178 (1947)). Any issues which the prisoner "already fully litigated on direct appeal may not be raised again 'under the guise of a collateral attack' unless there has been a 'material change' in the law 'between the direct appeal and the § 2255 motion.'" *Id.* (quoting *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) and *United States v. Masters*, No. 91-6100, 1992 WL 232466, at *2 (4th Cir. 1992)); *see also United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004).

Additionally, as is relevant to this case, "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) (citing *See United States v. Frady*, 456 U.S. 152, 167-68 (1982)). "The existence of cause for a procedural default must turn on something external to the defense, such as ... a denial of effective assistance of counsel." *Id.* at 493 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." *Id.* (citing *Murray*, 477 U.S. at 496). In this context, actual innocence means factual innocence "i.e., that [movant] did not commit the crime of

which he was convicted; this standard is not satisfied by a showing that [he] is legally, but not factually, innocent." *United States v. Pettiford,* 612 F.3d 270, 282 (4th Cir. 2010) (quoting *Mikalajunas*, 186 F.3d at 494). Meade has not claimed cause and actual prejudice; he makes no showing to support such a claim; and given his statements at the plea hearing, he would be hard-pressed to succeed on such a contention.

Consequently, the undersigned **FINDS** that Meade is barred from challenging the Court's application of the career offender enhancement and its determination of relevant conduct.

### B.  *Meade Fails to Establish Ineffective Assistance of Counsel*

When a movant alleges ineffective assistance of counsel under § 2255, the movant claims a violation of rights guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation

amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed … by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S. Ct. at 787)); *see, also, Strickland,* 466 U.S. at 687 (holding that the second prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In the context of a guilty plea, the movant carries a heavy burden under § 2255. By entering a guilty plea, the criminal defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, a guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Id.* Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as

frivolous. *U.S. v. Lemaster,* 403 F.3d 216, 221-222 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court ... carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.* Consequently, a criminal defendant is precluded from raising alleged constitutional deprivations that occurred prior to pleading guilty and "may only attack the voluntary and intelligent character of the guilty plea" by demonstrating that his counsel's performance was inadequate under the Sixth Amendment. *Tollett v. Henderson,* 411 U.S. at 267; *see, also*, *Fields v. Attorney General of State of Md.,* 956 F.2d 1290, 1296 (4th Cir. 1992)("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). In other words, the movant under § 2255 must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence, but must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

### 1. Counsel was not ineffective in the wording of the plea agreement

Meade first alleges that his counsel was ineffective by facilitating "a plea contract which had an enhancement of the Armed Career Offender Label despite knowledge that his client did not meet the criteria for such an enhancement." (ECF No. 49 at 6). This claim of ineffective assistance of counsel fails, because it is not supported by the facts.

14

The plea agreement does not contain any reference to the armed career criminal enhancement, or the career offender guidelines. (ECF No. 22). Instead, the plea agreement sets out the maximum penalty associated with the crime of conviction; including, 20 years of imprisonment, a fine of 1 million dollars or more, and three years of supervised release. (*Id.* at 2). The plea agreement clearly explains that sentencing "is within the sole discretion of the Court." (*Id.* at 5). No estimate of the guidelines sentence range is supplied, nor does the agreement indicate that the Government intends to seek a career offender, or career criminal, enhancement.

Furthermore, Meade is incorrect that he did not meet the criteria for a career offender enhancement. At the time of Meade's sentencing, USSG § 4B1.1 stated as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1 (2015). The USSG defined a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c). USSG § 4B1.2(a) (2015). "[C]ontrolled substance offense" means "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of

a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." USSG § 4B1.2(b) (2015). According to application note 2 to USSG § 4B1.2, the provisions set forth in § 4A1.2 are applicable to the counting of convictions under § 4B1.1. Germane to this case, § 4A1.2(e) sets temporal requirements in relation to prior convictions and provides as follows:

> (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

> (2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

> (3) Any prior sentence not within the time periods specified above is not counted.

> (4) The applicable time period for certain sentences resulting from offenses committed prior to age eighteen is governed by § 4A1.2(d)(2).

USSG § 4A1.2(e) (2015).

In the present case, the drug trafficking conspiracy to which Meade pleaded guilty began in January 2010, (ECF No. 1), when Meade was 40 years old. (ECF No. 36 at 3). The crime of conviction was felony conspiracy to distribute oxycodone, which plainly falls within the definition of "controlled substance offense." The Court considered two predicate convictions in applying the career offender enhancement. First, Meade had a 1994 conviction for attempted first degree murder under West Virginia law. The statute under which Meade was convicted required as an element that the defendant "shoot, stab, cut, or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill," and the statute set a sentence range between 1 and 10

years depending upon whether the act was done maliciously. W. Va. Code § 61-2-9 (1978). Looking at the portion of the statute under which Meade was convicted and sentenced, the Court found that Meade's crime necessarily included as an element the attempted use of physical force, qualifying it as a crime of violence under the elements clause of § 4B1.2(a)(1). (ECF No. 55 at 4-6). The Court confirmed that Meade was incarcerated, serving a one to five year sentence on the attempted murder conviction, in February 1995—thus, within 15 years of the inception of the conspiracy; consequently, the Court correctly found that this offense qualified as a predicate conviction under the career offender guidelines. Meade argues that the conviction does not count as a predicate, because the facts of the case do not support its characterization as a violent crime. Meade explains that he was involved in a car chase and resisted arrest, but did not attempt to murder anyone. Meade's argument is unavailing, because the facts giving rise to the conviction are not considered in determining the applicability of the conviction; instead, the Court looks at the elements of the statute under which Meade was convicted. *See Taylor v. United States,* 495 U.S. 575, 602 (1990). The elements of the West Virginia statute for attempted first degree murder unequivocally require the attempted use of physical force for a conviction. Therefore, the Court did not err in counting that conviction.

The second conviction used by the Court was based on a 1996 felony conspiracy to distribute marijuana, which was imposed in federal court in this district and carried a sentence of 50 months' imprisonment. Contrary to Meade's representation that this conviction was for simple "possession" of marijuana, the statute under which Meade was convicted is a drug trafficking statute. Of interest, the record of this Court reflects that Meade admitted to being the organizer of a five-person conspiracy that obtained and

17

distributed marijuana in Huttonsville Correctional Center where Meade was serving a sentence. *United States v. Meade*, Case No. 3:96-cr-00185-01 (S.D.W. Va. 1996) at ECF No. 164. Approximately twenty pounds of marijuana was smuggled to Meade for distribution to inmates, or was smuggled directly to other inmates at Meade's behest. (*Id.*). This conviction undoubtedly qualifies as a felony controlled substance offense that resulted in Meade being incarcerated during any part of the fifteen-year period before the oxycodone conspiracy began. Therefore, this offense properly constituted the second requisite predicate conviction for purposes of the career offender enhancement.

Given that there is no factual basis to support Meade's first claim of ineffective assistance of counsel, the undersigned **FINDS** that this ground for relief is meritless.

### 2. *Counsel was not ineffective in the investigation of the case*

Meade argues that his counsel had a "conflict of interest" and allowed a *Brady* violation to occur when counsel failed to investigate packaging receipts from Federal Express that showed Meade was part of the oxycodone conspiracy for a mere three months—not a full year—and handled only 5,000, rather than 15,000, pills. Once again, Meade's contention lacks any factual support. Furthermore, his contention directly contradicts the statements he made under oath at the Rule 11 hearing and the stipulation of facts that he agreed were true.

As stated, in order to succeed on an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. A defendant's assertion that he would not have pled guilty is not dispositive of the issue. Instead, the court conducts an "objective inquiry," which is "dependent on the likely outcome of a trial had the defendant not

18

pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (citations omitted). As part of the inquiry, the court considers the representations of the defendant during the plea proceedings, as well as the court's findings in accepting the guilty plea. *Id.* at 369-70.

Meade complains that his trial counsel failed to conduct a reasonable pretrial investigation, instead relying upon the Government's claims. Inasmuch as these contentions contradict Meade's testimony at the plea hearing, the undersigned finds them to be palpably incredible and patently frivolous or false. At the plea hearing, the Court specifically asked Meade if he was satisfied with the legal advice he had received from counsel. (ECF No. 56 at 21). Meade acknowledged that he was satisfied with counsel's professional services and verified that his attorney *had not left anything undone which Meade felt needed to be done.* (*Id.*). Certainly, if Meade—who knew how long he participated in the conspiracy and how many pills he distributed—believed that the Government's representations were substantially incorrect, or that his lawyer was lacking in discovery, he would have spoken up when asked by the Court if anything was left undone.

Moreover, Meade signed a plea agreement containing a stipulation of facts, which Meade accepted via his initials. (ECF No. 22). According to the stipulation, Meade admitted that he personally conspired with other individuals from January 2010 through January 11, 2011 to distribute oxycodone and to launder the proceeds received from the conspiracy's drug trafficking. (*Id.* at 7). Meade acknowledged that during the period of May 2010 through January 8, 2011, he received 15 priority overnight packages containing oxycodone for distribution, and he was responsible for distributing an amount of oxycodone equivalent to at least 3000 kilograms, but not more than 10,000

kilograms, of marijuana. (*Id.* at 8*).* If Meade were only involved with the conspiracy for three months and distributed considerably less oxycodone, he would not have agreed to that stipulation of facts.

At the plea hearing, Meade confirmed that he had read every page of the plea agreement and initialed each page. (ECF No. 56 at 5). He conceded that he agreed with all of the terms and provisions contained in the plea agreement, and expressly acknowledged his agreement with the stipulation of facts, indicating that all of the facts stated were true. (*Id.* at 6). Meade admitted that he had committed the crime outlined in Count One and that neither he nor his attorney found any viable defense to the crime charged. (ECF No. 56 at 21).

Moreover, Meade is unable to show prejudice from the alleged lack of pretrial investigation. Meade does not assert, or even imply, that a more robust investigation would have convinced him to go to trial, rather than to enter a guilty plea. An examination of the circumstances leading to Meade's guilty plea renders his assertion of prejudice even more improbable. The evidence against Meade was overwhelming. The Government had grand jury testimony from Lester Taylor, Meade's co-conspirator, in which Taylor testified that he had sent Meade Federal Express packages between 2010 and January 2011, each of which contained 1000 30-milligram oxycodone pills. (ECF No. 36 at 11). The last package was intercepted by members of the Huntington Police Department, who found 1000 oxycodone pills inside. (*Id.* at 8). In addition, Taylor testified that he gave Meade 2000 oxycodone pills, in person, at their first meeting, which occurred in late 2009 or early 2010.  (*Id.*). A review of Federal Express records indicated that Taylor sent Meade 15 packages during the period of the conspiracy. They were sent from various addresses and individuals in Florida connected with Taylor and

were addressed to "Harrison Meade," an alias used by Meade. (ECF No. 36 at 9). A search of Meade's residence yielded marijuana, oxycodone pills, benzodiazepine bars, 16 deposit slips reflecting $149,500 placed by Meade into an account belonging to Taylor, $4800 in cash, a ledger of drug transactions, and two cellular telephones, which contained Taylor's telephone number. (*Id*. at 9-10). Finally, a confidential informant advised law enforcement in an interview that Meade had been selling Roxycodone in Lincoln County for years and had a substantial customer base, which congregated on his property to make purchases. (*Id*. at 10).

Meade suggests that the prosecution was guilty of a *Brady* violation related to Federal Express packaging slips. Meade claims that the packaging slips would have shown that he only distributed 5,000 pills rather than 15,000 pills, and having a smaller number of pills attributed to him would have reduced his sentence. (ECF No. 50 at 2). However, Meade does not explain how the Government could have withheld packaging slips that were openly discussed in the PSR, or how the slips reflected information unknown to Meade about the number of oxycodone pills he distributed. Surely, Meade, who was the recipient of the packages, would have personal knowledge of how many oxycodone pills were sent to him and how many packages he received from Federal Express. Accordingly, the Government could not have been in a position to hide from Meade information that Meade already knew. Furthermore, Meade's guilty plea eliminated any viable claim of a *Brady* violation. *United States v. Brown*, 576 F. App'x 145, 148 (4th Cir. 2014) ("The *Brady* right, however, is a *trial* right ..., and exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty.") (quoting *United States v. Moussaoui,* 591 F.3d 263, 285 (4th Cir.2010)). "[T]he Constitution does not require the Government to disclose

material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* (quoting *United States v. Ruiz,* 536 U.S. 622, 628 (2002). Because no trial occurred, Meade may not assert a *Brady* violation. *Id.* (citing *Moussaoui,* 591 F.3d at 285.

By entering a guilty plea, Meade escaped conviction on an additional count of money laundering, which would have exposed Meade to the likelihood of a longer sentence. In view of the strength of the evidence against Meade, his admissions by stipulation, and his own testimony at the plea hearing, the undersigned **FINDS** no reasonable basis upon which to conclude that Meade would have insisted on proceeding to trial, if not for the alleged ineffective assistance of counsel in pretrial investigation.

## IV.    <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Movant's Motions and Supplemental Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF Nos. 39, 49, 50), be **DENIED;** Respondent's request for dismissal be **GRANTED**; and that this civil action be **DISMISSED** and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of

the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this deadline may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED:**  April 22, 2020

Cheryl A. Eifert
United States Magistrate Judge